AMERICAN CIVIL LIBERTIES UNION OF TENNESSEE; Save our Cumberland Mountains; J. W. Bradley; Charles Winfrey; Memphis Area Legal Services, Inc., Rural Legal Services of Tennessee, Inc., Plaintiffs,

v.

STATE OF TENNESSEE; William Leech, Jr., Attorney General of the State of Tennessee, Defendants.

No. 80–3105.

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 2, 1980.

Dean Hill Rivkin, Knoxville, Tenn., for plaintiffs.

Claudius C. Smith, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiffs bring suit under 42 U.S.C. § 1983 for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202. Jurisdiction is based on 28 U.S.C. § 1343(3), the jurisdictional analogue to section 1983. This case is before the Court to determine the constitutionality of Tennessee's "barratry" statute, T.C.A. §§ 39–3405 through 39–3410 (1975), which is set forth in the margin.[1] The Court conducted a hearing and

---

1. 39–3405. Barratry—Definitions.—The following words, terms, and phrases when used in §§ 39–3405–3410, shall have the meaning ascribed to them in this section, except when the context clearly indicates a different meaning.

(a) "Barratry" is the offense of stirring up litigation.

(b) A "barrator" is an individual, partnership, association or corporation who or which stirs up litigation.

(c) "Stirring up litigation" means instigating or attempting to instigate a person or persons to institute a suit at law or equity.

(d) "Instigating" means bringing it about that all or part of the expenses of the litigation are paid by the barrator or by a person or persons (other than the plaintiffs) acting in concert with the barrator, unless the instigation is justified.

(e) "Justified" means that the instigator is related by blood or marriage to the plaintiff whom he instigates, or that the instigator is entitled by law to share with the plaintiff in money or property that is the subject of the litigation or that the instigator has a direct interest in the subject matter of the litigation or occupies a position of trust in relation to the plaintiff; or that the instigator is acting on behalf of a duly constituted legal aid society established by the Bar Association of Tennessee or any local bar association of this state which offers advice or assistance in all kinds of legal matters to all members of the public who come to it for advice or assistance and are unable because of poverty to pay legal fees.

(f) "Direct interest" means a personal right or a pecuniary right or liability.

39–3406. Transactions exempt.–Sections 39–3405–39–3410 shall not be applicable to attorneys who are parties to contingent fee contracts with their clients where the attorney does not protect the client from payment of the costs and expense of litigation, nor shall §§ 39–3405–39–3410 apply to any matter involving annexation, zoning, bond issues, or the holding or results of any election or referendum, nor shall §§ 39–3405–39–3410 apply to suits pertaining to or affecting possession of or title to real or personal property, regardless of ownership, nor shall §§ 39–3405–39–3410 apply to suits involving the legality of assessment or collection of taxes or the rates thereof, nor shall §§ 39–3405–39–3410 apply to suits involving rates or charges or services by common carriers or public utilities, nor shall §§ 39–3405–39–3410 apply to criminal prosecutions, nor to the payment of attorneys by legal aid societies established by the Bar Association of Tennessee or any local bar association of this state, nor to proceedings to abate nuisances. Nothing herein shall be construed to be in derogation

heard arguments on this issue on July 11, 1980. In essence, this statute forbids one person from paying for the litigation expenses of another. *See* T.C.A. §§ 39–3405, 3407. The statute is enforceable by criminal penalties, T.C.A. § 39–3407 (making barratry a misdemeanor), and by suits for injunctive relief in equity. Based on the inescapable authority of the Supreme Court's decision in *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), this Court holds that the Tennessee statute unconstitutionally intrudes upon First Amendment freedoms, and is void in its entirety. The Court will not order injunctive relief at this time, however.

### Justiciability

Under Article III of the Constitution and 28 U.S.C. § 2201 (the Declaratory Judgment Act), this Court has no power to act unless there is an actual case or controversy between the parties. *See Ellis v. Dyson*, 421 U.S. 426, 433, 95 S.Ct. 1691, 1695, 44 L.Ed.2d 274 (1975). Defendant argues that there is and can be no case or controversy between plaintiffs and the State of Tennessee because the State is not a "person" within the meaning of 42 U.S.C. § 1983. Defendant's counsel is correct in this assertion, and the State is accordingly dismissed from this action. *See Wiesenfeld v. State of New York*, 474 F.Supp. 1141, 1144 (S.D. N.Y.1979) (Weinfeld, J.). A state cannot be a "person" under 42 U.S.C. § 1983 because the Eleventh Amendment immunizes states from federal lawsuits by individuals unless the state has consented to such actions. This prohibition applies even when the suit is only for prospective relief. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *see Savage v. Commonwealth of Pennsylvania*, 475 F.Supp. 524, 527–30 (E.D.Pa.1979), *aff'd*, 620 F.2d 289 (3d Cir. 1980). Article I, § 17 of the Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." In accordance with that constitutional provision, T.C.A. § 20–1702 (Supp.1979) prohibits "any suit against the state," and therefore this Court concludes that Tennessee has not abrogated its Eleventh Amendment immunity by consenting to be sued in this type of action.

The Attorney General further argues that he is not a proper party to this action because he is only a "nominal" defendant and he has not enforced the barratry statute against plaintiffs.[2] This argument is patently frivolous in light of T.C.A. § 8–6–109 (1980), which states that the Attorney General "shall" defend the constitu-

---

of the constitutional rights of real parties in interest to employ counsel or to prosecute any available legal remedy under the laws of this state.

39–3407. Barratry unlawful–Penalty.–It shall be unlawful to engage in barratry. A person found guilty of barratry, if an individual, shall be guilty of a misdemeanor, and may be punished as provided by law; and if a corporation, may be fined not more than ten thousand dollars ($10,000). If the corporation be a foreign corporation, its certificate of authority to transact business in Tennessee shall be revoked by the district attorney general of the district in which the offense is committed.

39–3408. Aiding or abetting a barrator.–A person who aids and abets a barrator by giving money or rendering services to or for the use or benefit of the barrator for committing barratry shall be guilty of barratry and punished as provided in § 39–3407.

39–3409. Injunction against barratry.– Courts of record having equity jurisdiction shall have jurisdiction to enjoin barratry.

Suits for an injunction may be brought by the district attorney general of the district in which the offense is committed.

39–3410. Barratry as unprofessional conduct.–Conduct that is made illegal by §§ 39–3405–39–3409 on the part of an attorney at law or any person holding a license from the state to engage in a profession is unprofessional conduct. Upon hearing pursuant to the provisions of § 29–309, if the defendant be found guilty of barratry, the judgment shall be permanent or temporary deprivation of the right to practice his profession, or a censure or reprimand, according to the gravity of the offense.

2. In its brief, plaintiffs allege that the Attorney General intervened on behalf of certain trucking companies who sued plaintiffs in state Chancery Court under the barratry statute. Counsel for the State admitted the Attorney General's intervention in that case in oral argument to this Court.

tionality of all legislation of statewide applicability, unless he is of the opinion that the legislation is not constitutional. *See also Peters v. O'Brien*, 152 Tenn. 466, 278 S.W. 660 (1925) (Attorney General is proper party in a declaratory judgment action to determine validity of a state statute). Moreover, it is well–established that a plaintiff does not have to wait until he is threatened with a prosecution before he may challenge a criminal statute that directly operates against him. *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973); *NAACP v. Button, supra*, 371 U.S. at 428, 83 S.Ct. at 335. Accordingly, the Court finds that the Attorney General is a proper defendant in this attack on the validity of Tennessee's barratry statute.

Plaintiff Save Our Cumberland Mountains, Inc., [SOCM] is a nonprofit Tennessee corporation that uses public interest litigation in support of its efforts to preserve and improve the environment and quality of life in the Appalachian coal fields of East Tennessee. Plaintiff Bradley is a former president of SOCM who has participated in litigation brought to further SOCM's interests. Plaintiff Winfrey is a staff member of SOCM who works with lawyers in investigating and coordinating litigation brought on behalf of SOCM and its members.

The American Civil Liberties Union of Tennessee [ACLUT], an affiliate of the national organization, is a nonprofit organization with 1,200 members in Tennessee. The ACLUT and its members frequently resort to litigation in pursuit of their goals.

Memphis Area Legal Services, Inc. [MALS], and Rural Legal Services of Tennessee, Inc. [RLST], are Tennessee nonprofit, publicly–funded law firms established to provide free legal services to indigent persons and organizations in their respective service areas. These agencies utilize public interest litigation on behalf of their clients without charge.

■ The Court finds that plaintiff SOCM, its members Bradley and Winfrey, and the ACLUT present a justiciable controversy and have standing in this action.

Their situation is much like that of the Georgia physicians who challenged Georgia's abortion statutes in *Doe v. Bolton, supra*, even though none of these physicians had been threatened with prosecution under the Georgia statutes. The Supreme Court found that the physicians had standing because the criminal statutes operated directly against them. 410 U.S. at 188, 93 S.Ct. at 745. In the same manner, the barratry statute operates directly against SOCM, the plaintiffs Bradley and Winfrey, and ACLUT. The statute clearly prohibits "bringing it about that all or part of the expenses" of litigation are paid for by someone other than the named plaintiffs in a particular action. ACLUT and SOCM indisputably pay for litigation expenses on behalf of plaintiffs, and plaintiffs Bradley and Winfrey make efforts to "bring it about" that SOCM will provide such services. Thus, the statute on its face directly operates against these parties.

The Court further finds that the statute presents a real threat of injury to these plaintiffs. The statute is not moribund, having been enacted in 1957. *Cf. Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (dismissing appeal from a challenge to an 1879 Connecticut statute). Although there has been no showing that the statute has ever been invoked in a criminal prosecution, the major peril posed by it is its provision for civil actions by private parties to obtain injunctions against barratry. Indeed, plaintiff SOCM was recently the defendant in such an action, which was brought by coal trucking companies who had been sued by SOCM and three of its members under the provisions of a Tennessee statute, T.C.A. § 59–1112 (current version at T.C.A. § 55–11–206 (1980)), which permits any taxpayer of the state to enjoin the movement of overweight trucks on state highways. Shortly before the scheduled trial date in that case, the trucking companies sued for an injunction under the barratry statute, claiming that the arrangements between SOCM and the individual plaintiffs constituted barratry. The chancellor refused to dismiss the barratry suit,

and SOCM was subjected to discovery proceedings in that case. The parties in these two cases ultimately reached a settlement, and both cases were dismissed.

This episode demonstrates beyond doubt that Tennessee's barratry statute is far from moribund, and can be effectively applied against plaintiffs such as SOCM and ACLUT. Consequently, the Court finds that they have standing to challenge its constitutionality. The statute's applicability to MALS and RLST is less clear, however, because of an exemption in the statute that protects the activities of legal aid societies established by the Bar Association of Tennessee or any local bar association which offers advice or assistance "in all kinds of legal matters to all members of the public who come to it for advice or assistance and are unable because of poverty to pay legal fees." T.C.A. § 39–3405(e). RLST and MALS argue that their activities are chilled because of their uncertainty as to whether this exemption applies to them. The Court will not pass on the question of their standing, however, because the issue before the Court is sufficiently presented by SOCM and ACLUT. *See Doe v. Bolton, supra,* 410 U.S. at 189, 93 S.Ct. at 746.

### The Merits

■ Having arrived finally at the merits of this action, the Court finds that the issue presented can be readily disposed of. It is quite apparent that the case of *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), requires this Court to declare Tennessee's barratry statute unconstitutional. This conclusion is so transparent that the Court must confess some surprise that the Attorney General elected to defend this statute, given his discretion under T.C.A. § 8–6–109 not to defend patently unconstitutional legislation.

In *Button* the NAACP attacked the constitutionality of Virginia's barratry statute. The Virginia statute, like Tennessee's, made it a crime for one person or organization to pay the litigation expenses of another. In finding the statute unconstitutional, the Supreme Court held that the First Amendment protects "vigorous advocacy" of lawful ends. *Id.* at 429, 83 S.Ct. at 335. This protection extended to the NAACP's activities, which included encouraging prospective litigants to engage in civil rights litigation, with the NAACP providing the legal expertise and expenses. *Id.* at 419–22, 83 S.Ct. at 330–332. The Court recognized that the states have a legitimate interest in regulating the legal profession to insure that lawyers do not reap gain by encouraging another to engage in *private* litigation. *See id.* at 439–41, 83 S.Ct. at 341–342. A state may not, however, ignore constitutional rights under the guise of prohibiting professional misconduct, *id.* at 439, 83 S.Ct. at 341, and the Virginia statute not only ignored, but criminalized, the NAACP's exercise of its First Amendment right to advocate lawful ends. In reaching this decision, the Court found nothing in the record to show that the barratry statute was constitutionally applicable to the activities of the NAACP in Virginia. *Id.* at 444, 83 S.Ct. at 343.

Just as the Virginia statute made the NAACP's activities criminal, the Tennessee statute plainly prohibits the activities of SOCM. Although their respective objectives are different, the activities of the NAACP and SOCM are not significantly distinguishable. Both groups have advised individuals and referred them to attorneys whose services are paid for by the organizations, and the respective statutes of Virginia and Tennessee prohibited and prohibit such activities. Like the record in *Button,* there is nothing in the record before this Court to show that SOCM's ends are not lawful, or that it engages in its activities for private gain, in which event the state could legitimately exercise its regulatory powers against SOCM.[3] These regulatory powers cannot be employed to stifle constitutional rights, however, 371 U.S. at 439, 83

---

**3.** This is not to suggest that a finding that SOCM's activities are legitimate would be necessary in order for SOCM to have standing to challenge this statute. *See* L. Tribe, American Constitutional Law §§ 12–28, 12–29 (1978).

S.Ct. at 341, and because of its sweeping nature, that is precisely what the Tennessee statute does. In an area so closely touching our most precious freedoms, "precision of regulation must be the touchstone." *Id.* at 438, 83 S.Ct. at 340. It makes no difference that no criminal prosecution has been commenced or threatened under the statute; "It is enough that a vague and broad statute lends itself to selective enforcement against unpopular causes." *Id.* at 435, 83 S.Ct. at 339. Moreover, the barratry statute has in fact been invoked civilly to prevent the exercise of SOCM's constitutional rights, and thus the danger it poses to the exercise of constitutional freedoms is not merely academic.

Aside from his standing argument, the Attorney General's only defense of the statute at the July 11 hearing was an attempt to distinguish *Button* on the grounds that *Button* was a "racial discrimination" case. A reading of that decision discloses the following: "That the petitioner happens to be engaged in activities on behalf of the rights of Negro children to equal opportunities is constitutionally irrelevant to the ground of our decision." *Id.* at 444, 83 S.Ct. at 344. Accordingly, the Court summarily rejects counsel's argument.

The statute does not lend itself to a narrowing construction that would limit its application to illegitimate activities that are properly prohibited. Consequently, the Court holds that T.C.A. §§ 39–3405 through 39–3410 are void in their entirety. Plaintiffs' prayer for an injunction is denied, however, because there has been no allegation or proof that defendant will not acquiesce in this decision. *See Poe v. Gerstein,* 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974). If at some future time such a showing can be made, the Court will not hesitate to order injunctive relief. The Court further finds that this is an appropriate case for the award of attorneys' fees under 42 U.S.C. § 1988, and a hearing on that matter shall be conducted on Friday, September 12, 1980, at 1:00 p. m.